**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

LARRY MEITZNER,

     *Plaintiff*,

     *v*.                         CASE NO. 15-CV-12870

MICHAEL J. TALBOT,          DISTRICT JUDGE THOMAS L. LUDINGTON
KURTIS T. WILDER,            MAGISTRATE JUDGE PATRICIA T. MORRIS
MICHAEL J. RIORDAN,
LARRY S. ROYSTER, and
JOHN DOE,

     *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS (Doc. 9) AND PLAINTIFF'S**
**MOTION FOR CONTINUANCE (Doc. 12).**

**I.**     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants'

motion to dismiss (Doc. 9) be **GRANTED**, Plaintiff's motion for continuance (Doc. 12)

be **DENIED AS MOOT**, and Plaintiff's amended complaint (Doc. 13) be **DISMISSED**

**WITH PREJDUICE**.

**II.**     **REPORT**

     **A.**     **Introduction**

On August 13, 2015, Plaintiff Larry Meitzner ("Meitzner"), proceeding *pro se*,

filed a complaint, listing as defendants Michael J. Talbot, Kurtis T. Wilder, Michael J.

Riordan, Larry S. Royster, and John Doe (collectively "Defendants"). (Doc. 1 at 1). The

basis of Meitzner's claim is somewhat unclear, but generally asserts that Defendants, who comprise judges and a clerk of the Michigan Court of Appeals[1], "falsif[ied] a presentation of the Michigan Court of Appeals" by rendering a ruling with which Meitzner disagrees, and which he considers to be "prima facie evidence of wrongdoing." (*Id.* at 1-2). On September 11, 2015, Meitzner filed a "motion for continuance" in which he erroneously asserted that Defendants had not yet responded to his complaint[2], and requested, inexplicably, that the Court grant Defendants another twenty-one days in which to respond. (Doc. 12). Also on September 11, 2015, Meitzner filed an amended complaint which duplicates his original complaint, except insofar as it specifies the amount of punitive damages sought.[3] (Doc. 13). On September 25, 2015, Defendants reincorporated the reasoning, facts, and argument of their motion to dismiss against

---

[1] Specifically, Defendants Talbot, Wilder, and Riordan are judges on the Michigan Court of Appeals, whereas Defendant Royster is Chief Clerk to the Michigan Court of Appeals. (Doc. 15 at 23-25).

[2] Meitzner complains in his response to Defendants' motion to dismiss that Defendants' answers were not "served ON the plaintiff," but rather were submitted "250 miles away in Lansing." (Doc. 15 at 15). While somewhat unclear, Meitzner seems to be suggesting that Defendants failed to mail a copy of their motion to dismiss to his home. Defendants filed a certificate of service indicating that they served Meitzner at his Rogers City address. (Doc. 9). Meitzner's response to Defendants' motion to dismiss was filed on October 1, 2015, two days after the Court's response deadline. (Docs. 11, 15). Even assuming that Meitzner was not timely served with Defendants' motion to dismiss, he was able to file his response with minimal delay, and there is no evidence that he was prejudiced by such delay.

[3] An "amended complaint supplants the original complaint and becomes the only live complaint in a civil case." *United States v. Goff*, 187 F. App'x 486, 491 (6th Cir. 2006). However, given the nearly identical nature of Meitzner's complaints, and given the confusing nature of his pleadings, the Court will consider the exhibits attached to both his original and amended complaints.

Meitzner's amended complaint. (Doc. 14). On October 1, 2015, Meitzner filed a response to Defendants' motion to dismiss. (Doc. 15).

### B.     Motion to Dismiss Standards

Defendants move for dismissal under Rule 12 of the Federal Rules of Civil Procedure. A motion to dismiss brought under Rule 12(b)(1) challenges the court's subject matter jurisdiction to hear the case. Where a defendant makes a facial attack on the subject matter jurisdiction alleged in a complaint, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). This is in contrast to a factual attack on subject matter jurisdiction, wherein the "district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6)

standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6),

"a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a

complaint need not contain "detailed" factual allegations, its "[f]actual allegations must

be enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true

all of the allegations contained in the complaint is inapplicable to legal conclusions."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the

"principal architect" and another defendant was "instrumental" in adopting and executing

a policy of invidious discrimination insufficient to survive a motion to dismiss because

they were "conclusory" and thus not entitled to the presumption of truth). Although Rule

8 "marks a notable and generous departure from the hyper-technical, code-pleading

regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions." *Id*. "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id*. at 679. Thus, "a court

considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth . . .

. When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### C.    Analysis

Meitzner's claim relates to a matter litigated in the Presque Isle Circuit Court, a Michigan state trial court, which was affirmed in the Michigan Court of Appeals, wherein Meitzner was found to have "encroach[ed] upon or interfere[ed] with . . . [the] use of an easement that runs across [his] land." *Clark v. Meitzner*, No. 304639, (Mich. Ct. App. Aug. 16, 2012). In his short complaint, Meitzner suggests that the Michigan Court of Appeals issued an erroneous ruling by affirming the decision of the trial court, an assertion which he supports through reference to alleged mistakes made at the trial and

appellate levels. (Doc. 1 at 2-5). Meitzner asserts that Defendants "falsif[ied] a presentation of the Michigan Court of Appeals," a conclusion he draws because "while the basis for the affirm [sic] . . . appears to be solid, this is far from reality." (*Id*. at 1-2). Meitzner asserts that it is "clear that a wrong was done," which he asserts was "in retaliation to an inadvertant [sic] use of a court rules short coming, which they then felt compeled [sic] to change." (*Id*. at 3). Meitzner also discusses the entry of certain photographic evidence, which he asserts was irrelevant, and thus argues that the Court of Appeals was in error to cite that evidence in affirming the trial court. (*Id*. at 4). Meitzner also alleges in his complaint that "[t]here was no testimony from [the plaintiff] that he worked on the easement. This is a false statement – a lie." (*Id*. at 2). Meitzner concludes that the "ruling by the 3 judges is prima facie evidence of wrongdoing." (*Id*.). In his Civil Cover Sheet, Meitzner lists "Article 14 Bill of Rights / Title 42 / Mail Fraud" as the jurisdictional bases for his complaint, though he does not reference these statutes the complaint itself. (*Id*. at Civil Cover Sheet).

Defendants move to dismiss Meitzner's complaint "under Fed R. Civ. P. 12," though they do not specify under which subsection of Rule 12 they believe it should be dismissed. (Doc. 9 at 1). Defendants note that Meitzner "has failed to identify any federal question in the body of his complaint," and thus "has failed to sustain his burden of establishing jurisdiction." (*Id*. at 4). Defendants also argue that Meitzner's complaint should be dismissed because Defendants are cloaked with absolute judicial immunity, and pursuant to the *Rooker-Feldman* doctrine. (*Id*. at 2-12). For the reasons discussed

6

below, the Court finds that Defendants are correct, and that any of these three grounds for

dismissal would be sufficient to require that Meitzner's complaint be dismissed.

### i.      Subject Matter Jurisdiction

Federal courts are under an independent obligation to examine their own

jurisdiction. *U.S. v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules

of Civil Procedure provides that, if a court "determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Dismissal

for lack of subject matter jurisdiction occurs pursuant to Rule 12(b)(1).

There are two ways this Court can obtain subject matter jurisdiction: first, the

United States Code provides that "[t]he district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States." 28

U.S.C. § 1331. This statute confers on the federal district courts what is known as

"federal question jurisdiction." Second, pursuant to 28 U.S.C. § 1332, diversity

jurisdiction arises when the matter is between citizens of different states and the amount

in controversy exceeds $75,000.

Here, Defendants do not challenge the factual assertions in Meitzner's complaint,

but rather assert that there is no basis for subject matter jurisdiction alleged in the

complaint. (Doc. 9 at 4). The Court is thus obliged to assume the truth of those

allegations in Meitzner's complaint for the purpose of determining whether subject

matter jurisdiction exists. However, as with motions pursuant to Fed. R. Civ. P. 12(b)(6),

this presumption of truth does not apply to allegations which are threadbare or

implausible. *See Iqbal*, 556 U.S. at 678 (establishing this standard and applying it to

"threadbare recitals of the elements of a cause of action"); *Amidax Trading Grp. v. S. W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (applying the plausibility standard established in *Iqbal* to facial attacks on subject matter jurisdiction).

### 1.    Original Complaint

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). However, this "leniency . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

As noted above, the specific allegations in Meitzner's complaint are limited to assertions that the Michigan Court of Appeals "falsif[ied] a presentation," affirmed the decision of the lower court without a solid "basis for the affirm [sic]," committed "a wrong," and engaged in some form of "retaliation to inadvertent [sic] use of a court rules shortcoming." (Doc. 1 at 1-3). Meitzner also attached to his original complaint letters or notes in which he suggests that the Court of Appeals committed certain errors of fact and law, and also attaches the *Clark v. Meitzner* decision and transcripts from the trial in that case. (*Id*. at 4-17). Meitzner mentions several federal statues in his civil cover sheet, but these statutes are never referenced in his complaint, much less supported by factual assertions in a manner that would render his claims plausible. (*Id*. at civil cover sheet; *Iqbal*, 556 U.S. at 678).

### 2.    Amended Complaint

8

Meitzner's amended complaint did not modify his original complaint except insofar as it specifies the amount and type of damages he seeks; the primary difference between these complaints is that the operative complaint is attached to several letters mailed to the Michigan Court of Appeals. (Doc. 13 at 4-14).

Courts generally may not consider matters outside the pleadings when reviewing Rule 12(b)(6) motions, but may consider exhibits attached to the pleadings if those exhibits are referenced in the pleadings and are central to the claims in the complaint. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997). In his attached letters, Meitzner noted that three names appear on the Court of Appeals' decision in *Clark v. Meitzner*, demanded to know why there was "no pen-on paper" signature, and asked that the court "identify the author (typist) of the ruling," perhaps under the belief that he could obtain relief against the typist of that decision. (*Id*. at 4-5). Meitzner also notes his dissatisfaction with responses he received from Defendant Royster on behalf of the Court of Appeals, who stated that the decision was a "collective effort," which Meitzner found "hard to understand that a trio of appellatt [sic] court judges sat down around a keyboard and pounded out the document." (*Id*. at 5). Meitzner also offered a bounty of "$1000 to your favorite charity if you claim th[e decision] as yours and justify it from the transcript," an amount which he later raised to $2100.[4] (*Id*. at 6, 9). Meitzner also attempted to relitigate his case through these letters, asserting that various findings of the

---

[4] In his original complaint, Meitzner references "attempts at alternate dispute resolution" which he says "have been ignored." (Doc. 1 at 2). Meitzner appears to be referencing his offer of cash reward if a Court of Appeals employee will identify the author of the *Clark v. Meitzner* decision, or will detail where his argument erred.

Court of Appeals were "!!!FICTITIOUS!!!," or "!!!IRRELEVANT!!!," challenging certain findings of fact, and asserting that the Court of Appeals' decision was based on hearsay. (*Id*. at 6).

Meitzner's attached letters also take a threatening tone at times:

> I have sent several letters to Chief Judge Murphy to which he has not answered. I hope whoever has made this decision to ignore these letters realizes they have opened the switches on the track and have set the train in motion. . . . The court's ruling to affirm is blatantly erroneous; how or why at this point I do not care. Consider, though as the train travels along picking up passengers (and baggage) sooner or later someone is bound to ask WHAT'S THAT SMELL? Why, that is just an old stinkhound rolling around in the bureaucratic cesspool . . . . I truely [sic] believe someone switched you down the wrong track towards a washed out bridge. This shall be my only offer to you. I offer the opportunity to end this in-house before the train derails and crushes the system. You are the master of your destiny do what is right, or do nothing

(Doc. 13 at 8-9). He later asserts "you are afraid that admiting [sic] an error will set a precedent. Consider the alternative: going from in-house to outhouse. Need a confidentiality agreement? Fine. I am willing to bend. What are you willing to do? You have until 4-19-13 to respond." (*Id*. at 14). Meitzner signed his letter "your humble boss, Larry Meitzner A.K.A Stinkhound." (*Id*.). Elsewhere in his letters, Meitzner muses on whether his communications have been "intercepted," because he did not receive a response, and inquires as to whether he has become the victim of a "court cover-up or clerk's conspiracy." (*Id*. at 10-11).

Meitzner's communications also range into the unintelligible, asserting that "the laughable basis for the affirm tips the scales of justice(?) towards the clerk(s). Why? Perhaps it was mischievous or maybe it was malicious; if forced into phase 3, I will

care." (Doc. 13 at 12). He pledges "I am not going away, just(ice) shifting into a holding pattern at the end of the taxi-way, awaiting the signal to take off." (*Id*.). Meitzner further asserts "I refuse to be the fall guy for the system's error. My façade of mild-mannered senior citizen has been stripped away by your action to reveal: Super Stinkhound. I derive my power and endurance from rolling up the bureaucratic cesspool. Did the clerks tell you I had won my last dance marathon?" (*Id*. at 13).

Meitzner's complaint thus simply fails to establish federal subject matter jurisdiction. His references to federal law and constitutional rights are not developed or supported by any factual assertions, and the few factual assertions he does make cannot be reasonably construed to give the Court subject matter jurisdiction.

### 3. Response to Motion to Dismiss

A response to a motion to dismiss is not part of the pleadings for purposes of determining whether a plaintiff has set forth a claim for which relief can be granted, or for purposes of determining whether the Court has jurisdiction to hear a claim. *See Searcy v. Macomb Cnty. Jail*, No. 2:10-CV-11242, 2011 WL 4373956, at *1 (E.D. Mich. Sept. 20, 2011). However, due to Meitzner's *pro se* status and the confusing nature of his pleadings, it may be helpful to examine his statements in his response to Defendants' motion to dismiss in order to provide some context for the allegations in his complaint. In that response, Meitzner asserts that "never once has the actual conclusion been disputed; what is under discussion is the vehicle that takes us to that place – the falsified basis for the affirm [sic]." (Doc. 15 at 2). He alleges that the Court of Appeals "created" evidence "to justify their preconceived ruling," and considered evidence that was "irrelevant and

therefore inadmissible." (*Id*. at 2-3). Meitzner alleges that Defendant Royster was more than "a mere envelope stuffer," and that "[t]he letters which the plaintiff has received indicate a more active envolvement [sic]." (*Id*. at 6).

More substantively, Meitzner asserts that he can "show a motive for malice" on the part of Defendants, and asserts that their acts were not "reasonable." (Doc. 15 at 8). Meitzner similarly notes that "[t]he Constitution guarantees every citizen/resident of the United States access to a fair and impartial judicial process," and argues that he was denied this right because Defendants "have exceeded the scope of their authority." (*Id*. at 9). He also references 42 U.S.C. §§ 1983 and 1985, and mail fraud, but does not apply those statutes to the facts at hand in his case. (*Id*. at 11).

Meitzner also asserts that "[t]he court is hemmed into the ruling as an official document, and are using their (assumed) judicial immunity to cover up the act? This is more logical than (3) judges sitting down and typing out the opinion. Another question for the jury." (*Id*.). Meitzner inquires as to "what authority does [Defendants' attorney Froehlich] have to speak for 'John Doe'?" (*Id*. at 17). Meitzner again signed his response to Defendants' motion to dismiss as "Larry Meitzner . . . AKA Stinkhound." (*Id*. at 18).

Even when read in the most charitable light, and even when considering the new allegations Meitzner raises in his response to Defendants' motion to dismiss, no grounds for federal subject matter jurisdiction can be found. Meitzner makes passing mention in his response to his Constitutional guarantee to a fair and impartial trial (Doc. 15 at 9), 42 U.S.C. §§ 1983 and 1985, and mail fraud (Doc. 15 at 11). However, he does not provide any factual support for these allegations. Meitzner's factual allegations are limited to

accusations that the Michigan Court of Appeals erred by rendering an improper, corrupt, or otherwise incorrect decision. His accusations of falsification, retaliation, mischievous behavior, maliciousness, and cover ups are conclusory, threadbare allegation which do not receive the presumption of truth at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 678; *Amidax Trading Grp.*, 671 F.3d at 145. Meitzner has thus failed to establish that the Court has subject matter jurisdiction to hear his claims, and his complaint should be dismissed.

## II.    Judicial Immunity

Considering the totality of Meitzner's allegations, it appears that he believes the Michigan Court of Appeals committed some mix of fraud and error by affirming the decision in *Clark v. Meitzner*, and he seeks review and reversal of that court's decision. As noted above, there are simply no claims alleged in Meitzner's complaint which could grant subject matter jurisdiction to this Court, thus his complaint must be dismissed. Yet even if the Court had jurisdiction to hear Meitzner's claims, it would recommend dismissal on the basis of judicial immunity. Judicial immunity protects judges from suit for all actions which "aris[e] out of the performance of their judicial functions," with the exception of actions taken "in the clear absence of all jurisdiction." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). In other words, a judge is totally immune from suit for decisions made pursuant to their judicial functions where the judge acted with subject matter jurisdiction. *Holloway v. Brush*, 220 F.3d 767 (6th Cir. 2000) (en banc). This immunity applies even when judicial acts are performed "corruptly or with malice." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012).

13

Subject matter jurisdiction is "broadly construed" when considering issues of judicial immunity. *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 649 (6th Cir. 2014). Michigan Court of Appeals judges clearly have subject matter jurisdiction to rule on a case appealed to them from a Michigan trial court, a duty which is explicitly granted to the Michigan Court of Appeals. *See Mich. Ct. R.* 7.203(A)(2). Meitzner does not allege that the matter in *Clark v. Meitzner*, No. 304639, (Mich. Ct. App. Aug. 16, 2012) was not properly before the Michigan Court of Appeals, and there is no evidence to the contrary. Defendants Talbot, Wilder, and Riordan thus possessed subject matter jurisdiction over *Clark v. Meitzner*, and are completely immune to any liability for rendering that decision.

While Defendant Royster was a clerk of the Michigan Court of Appeals rather than a judge, it is well established that "other court officers," including court clerks, who act in the "performance of judicial or quasi-judicial functions" are also shrouded with absolute judicial immunity. *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988); *see also Bradley v. United States*, 84 F. App'x 492, 493 (6th Cir. 2003). Meitzner alleges that Royster was more than "a mere envelope stuffer," and that "[t]he letters which the plaintiff has received indicate a more active envolvement [sic]." (Doc. 15 at 6). In responding to Meitzner's letters and performing other business on behalf of the Michigan Court of Appeals, Royster was clearly engaged in a judicial or quasi-judicial function, and thus is also cloaked with absolute immunity from suit.

Meitzner challenges that judicial immunity does not operate to shield judges when they act with "malicious intentions to cause a deprivation of constitutional rights," citing the Supreme Court's decision in *Procunier v. Navarette*, 434 U.S. 555 (1978). Meitzner

14

has misread *Procunier*. There, the Supreme Court found that the *qualified immunity* accorded to certain prison officials would not protect them from suits alleging that they acted with the malicious intention to deprive constitutional rights. *Id*. at 566. The Supreme Court specifically noted that "[t]he [prison officials'] claim was not that they shared the absolute immunity accorded judges and prosecutors but that they were entitled to . . . qualified immunity," thus the findings in that case are not relevant to the absolute judicial immunity at issue here. *Id*. at 560. As noted, unlike qualified immunity, the absolute immunity accorded to judicial officers who carry out judicial and quasi-judicial functions are protected from suit even if they acted "corruptly or with malice." *Leech*, 689 F.3d at 542; *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991). Moreover, "a state trial court's alleged abuse of discretion . . . is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). To reiterate, even if Meitzner was correct that Defendants acted wrongly, corruptly, maliciously, or otherwise improperly in rendering a decision contrary to law, his claim would still fail because Defendants are protected by absolute immunity.

### III.   *Rooker-Feldman*

Finally, Meitzner's complaint should also be dismissed pursuant to the *Rooker-Feldman* doctrine. That doctrine, established in the cases *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983), provides that only the United States Supreme Court possesses the power to review state court findings, or to adjudicate claims which are "inextricably intertwined" with issues decided in state court proceedings. In other words, lower federal courts lack

15

jurisdiction to hear claims wherein the "plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). Here, Meitzner asserts that the Michigan Court of Appeals rendered an incorrect decision based on incorrect reasoning, fraudulent conduct, or some other irregularity. (Docs. 1, 15). The only conduct he alleges Defendants engaged in was rendering that decision, and responding to his letters. (Doc. 1 at 2-5, Doc. 15 at 2-9). Meitzner thus clearly seeks review of the Michigan Court of Appeals' decision, which is precisely the sort of claim that *Rooker-Feldman* prevents lower federal courts from entertaining. *See Tillman v. Michigan Court of Appeals*, No. 2:14-CV-13282, 2014 WL 4706003, at *2 (E.D. Mich. Sept. 22, 2014) (dismissing a complaint pursuant to *Rooker-Feldman* where a plaintiff alleged that a decision rendered by the Michigan Court of Appeals was procedurally and constitutionally unsound). If Meitzner believes that the Michigan Court of Appeals erred in its decision in *Clark v. Meitzner*, his remedy is to appeal that decision to the Michigan Supreme Court. *See James v. DLJ Mortgage Capital, Inc.*, No. 13-13936, 2015 WL 1119948, at *7 (E.D. Mich. Mar. 11, 2015) (noting that a litigant dissatisfied with the judgment of a Michigan County Circuit may appeal to the Michigan Court of Appeals, and that once who is dissatisfied with the judgment of the Court of Appeals may appeal to the Michigan Supreme Court). He may not seek review of a state court decision in federal district court.

### IV.    John Doe Defendant

Meitzner also challenges Defendants' counsel entering a response on behalf of defendant John Doe. (Doc. 15 at 17). Defendants frequently file motions and other

documents on behalf of unidentified and unserved John Doe defendants, particularly

when the John Doe defendant is alleged to be an employee of a government agency. *See*,

*e.g.*, *Nicholson v. City of Chattanooga, Tenn.*, No. 1:04-CV-168, 2005 WL 2657001, at

*5 (E.D. Tenn. Oct. 18, 2005); *Resor v. Graves*, 108 F. Supp. 2d 929, 930 (E.D. Tenn.

2000). Moreover, John Doe appears only once in Meitzner's complaint, and he makes no

factual assertions regarding the conduct of this John Doe whatsoever. (Doc. 1 at 6). A

complaint which does not state any factual allegations regarding a particular defendant

must be dismissed as against that defendant. *See Moore v. Chase Home Fin.*, LLC, No.

11-CV-13803-DT, 2012 WL 666795, at *3 (E.D. Mich. Feb. 29, 2012). Meitzner's

suggestion that John Doe may be "the driving force behind the false basis for the affirm"

(Doc. 15 at 17) similarly does not save his complaint; as discussed above, any claim

based on the Michigan Court of Appeals issuing a decision wrongly, corruptly,

maliciously, or otherwise improperly must be dismissed pursuant to Defendants' absolute

judicial immunity.

### V.     Meitzner's Motion for Continuance

As noted above, on September 11, 2015, Meitzner filed a motion for continuance,

in which he asserted that "Defendants have been non-responsive to the complaint within

the 21 days after service." (Doc. 12). For reasons unclear to the Court, rather than move

for default judgment, Meitzner requested that the Court "extend the default judgment

another 21 days in order to respond to the attached amended complaint," apparently

requesting that the Court give Defendants additional time to respond. (*Id*.). He also

asserted that he would "try to make personal service to the Defendants to negate any

possibility of clerk interference." (*Id*.). Because the Court recommends dismissal of Meitzner's amended complaint, his motion for continuance (Doc. 12) is moot.

### VI.   Frivolousness

Attached to Meitzner's response to Defendants' motion to dismiss is a letter addressed to "Janice," presumably an employee with the Michigan Court of Appeals. (Doc. 15 at 28). In that letter, Meitzner queries why he has not received a response from Defendant Talbot, and asserts "I am only trying to avoid embarrassment to all parties by filing a frivolous lawsuit when a simple alternative dispute resolution could show me the error of my ways." (*Id*.). Like the remainder of Meitzner's pleadings, this language is somewhat unclear and subject to multiple interpretations. However, Meitzner's statements in this letter suggest that he may recognize the frivolous nature of his claims, and is pursuing this action as a means to compel Defendants to explain or alter their decision in the matter of *Clark v. Meitzner*.

The Court cautions Meitzner that the filing of frivolous lawsuits, particularly repeated frivolous suits, is grounds for monetary sanctions or the issuance of a prefiling injunction. *See Chance v. Todd*, 74 F. App'x 598, 600 (6th Cir. 2003) (affirming the issuance of a prefiling injunction where a plaintiff had filed at least four prior frivolous lawsuits, and his claims in the instant suit were barred by absolute judicial immunity); *Kircher v. City of Ypsilanti*, No. 04-72449, 2008 WL 344525, at *2 (E.D. Mich. Feb. 7, 2008) (issuing sanctions against a plaintiff who filed frivolous claims against defendants who were entitled to absolute judicial immunity); *Williams v. Grand Rapids Pub. Library*, No. 1:06-CV-635, 2006 WL 3299772, at *2 (W.D. Mich. Nov. 14, 2006) (noting

that litigants proceeding *pro se* are "obliged, like all other litigants, not to file baseless or frivolous papers with the federal court" and noting that sanctions may be appropriate against a litigant who files suit against defendants who are "clearly immune" from liability).

### D.    Conclusion

For the reasons above, I recommend **GRANTING** Defendant's motion to dismiss (Doc. 9), **DENYING AS MOOT** Meitzner's motion for continuance (Doc. 12), and **DISMISSING** Plaintiff's complaint (Doc. 1) **WITH PREJUDICE**.

### E.    Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

19

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to

which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to Objection

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: October 30, 2015                                    S/ PATRICIA T. MORRIS
                                                          Patricia T. Morris
                                                          United States Magistrate Judge



### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the
Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also
sent via First Class Mail to Larry Meitzner at 4209 Klee Road, Rogers City, MI 49779.

Date: October 30, 2015                    By s/Kristen Krawczyk
                                           Case Manager to Magistrate Judge Morris